# United States District Court
## for the Northern District of Oklahoma

---

Case No. 19-cv-243-JDR-CDL

---

DOUBLE EAGLE ALLOYS, INC.,

*Plaintiff,*

*versus*

MICHAEL HOOPER; ACE ALLOYS, LLC,

*Defendants.*

---

OPINION AND ORDER

---

In April 2019, Defendant Michael Hooper left his employment with Plaintiff Double Eagle Alloys, Inc. to work for Ace Alloys, LLC, a competitor of Double Eagle's. He took with him notes from his time as a sales representative for Double Eagle and over 2,600 digital files downloaded from his work computer onto a portable electronic storage device. Double Eagle learned of the download and brought this action for misappropriation of confidential business information, civil conspiracy, and violations of 18 U.S.C. § 1030, the Defend Trade Secrets Act, and the Oklahoma Uniform Trade Secrets Act. The parties filed cross-motions for summary judgment [Dkt. Nos. 278, 279], and the Court ordered supplemental briefing as to whether Double Eagle had sufficiently identified the trade secrets and business information at issue and whether the allegedly misappropriated information was protected, valuable, and of a secret or confidential character [Dkt. 333]. After reviewing the parties' motions, briefing, and exhibits, the Court concludes that Defendants' Motion for Summary Judgment should be GRANTED with respect to each of Double Eagle's claims.

Case No. 19-cv-243

## I.

Trade secrets, unlike other forms of intellectual property, are not necessarily defined prior to the onset of litigation. *TLS Mgmt. & Mktg. Srvs., LLC v. Rodriguez-Toledo*, 966 F.3d 46, 51-52 (1st Cir. 2020). As a result, trade-secret litigation is accompanied by the risk that a plaintiff will tailor the scope of its misappropriation claims mid-litigation. *Id. See, e.g., Next Commc'ns, Inc. v. Viber Media, Inc.*, 758 F. App'x 46, 49 (2d Cir. 2018) (noting that the plaintiff had "described its trade secret differently at each stage of the litigation"). A plaintiff that shifts the goalposts (or fails to define them) while litigation is ongoing effectively eliminates its opponent's ability to mount an effective defense. *TLS Mgmt.*, 966 F.3d at 51-52; *Quest Sol., Inc. v. RedLPR, LLC*, No. 2:19-CV-437-CW-DBP, 2021 WL 1688644, at *1 (D. Utah Apr. 28, 2021). For this reason, federal courts generally require plaintiffs pursuing misappropriation claims to describe the trade secrets at issue with sufficient particularity and clarity to permit their opponent—and the Court—to understand the precise scope of the issues before them. *E.g., TLS Mgmt.*, 966 F.3d at 51-54; *IDX Systems Corp. v. Epic Systems Corp.*, 285 F.3d 581, 583 (7th Cir. 2002). If a party fails to "engage[ ] in a serious effort to pin down the secrets [at issue]," the "court cannot do its job." *See IDX Systems*, 285 F.3d at 583.

Double Eagle failed to identify its alleged trade secrets with sufficient particularity and clarity to proceed to trial.[1] A plaintiff cannot simply point to

---

[1] A party's burden to clearly identify its trade secrets at the summary judgment stage is greater than its burden at the pleading stage. *See Edgenet, Inc. v. GS1 AISBL*, 742 F. Supp. 2d 997, 1027 (E.D. Wis. 2010). The question of whether a party has sufficiently identified its trade secrets is intertwined with the ultimate question of whether a jury could find in the plaintiff's favor. *See TLS Mgmt.*, 966 F.3d at 53–54 (holding that, where the plaintiff failed to identify the trade-secret process with specificity, "no reasonable fact finder could determine that [it had] proved its claim"); *Next Commc'ns*, 758 F. App'x at 49 (concluding that the plaintiff failed to raise a genuine issue regarding the existence of a trade secret when it " fail[ed] to describe with particularity any of the mechanisms" of its trade secret, preventing the court from determining what was encompassed); *Utah Med. Prod., Inc. v.*

Case No. 19-cv-243

a broad category of information and "invite the court to hunt through the details in search of items meeting the statutory definition" of a trade secret. *See IDX Systems*, 285 F.3d at 583-84 (concluding that the plaintiff's trade secret claim concerning "all information in or about its software" was "both too vague and too inclusive"). But that is what Double Eagle does here. Double Eagle points to the information downloaded by Mr. Hooper and argues that some or all of it falls into categories that may be protected. See Dkt. 278 at 18[2] (alleging that the misappropriated information "includes (inter alia) Double Eagle's PSQ specifications, its pricing, margins, costs, and customer drawings"). But it has made no effort to differentiate between the components of the download that cannot qualify as trade secrets—such as those that were disclosed without reservation—and those that meet the requirements for protection under the DTSA and OUTSA. *See Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1189 (10th Cir. 2009) (concluding that price quotes disclosed to clients without reservation did not qualify as trade secrets); *see also IDX Systems*, 285 F.3d at 584, 587 (affirming summary judgment on trade secret claim where "many" of the items in the description of the purported trade secrets were readily ascertainable by proper means).

Double Eagle cannot simply point to a list of documents and say, "the trade secrets can be found here." A party seeking to claim trade-secret protection must, at a minimum, describe the boundaries of the trade secrets in a manner that would permit the Court to understand whether trade-secret protection is being claimed with respect to individual files or a combination

---

*Clinical Innovations Assocs., Inc.*, 79 F. Supp. 2d 1290, 1313 (D. Utah 1999), *aff'd*, 251 F.3d 171 (Fed. Cir. 2000) (recognizing that clear articulation of scope of trade secret was necessary to differentiate the protected information from the general knowledge possessed by the defendants). Failure to identify a trade secret is, therefore, a failure of proof.

[2] All citations utilize CMECF pagination.

thereof,[3] evaluate whether the information (in whole or in combination) is publicly available,[4] and rule on motions in limine and evidentiary challenges. Double Eagle has failed to define its trade secrets with sufficient particularity to permit the Court to perform these essential functions. Because the Court cannot determine from the current record what Double Eagle's alleged trade secrets actually are, Double Eagle's claims under the OUTSA and DTSA must be denied as impermissibly overbroad. *Utah Med. Prod.*, 79 F. Supp. 2d at 1313 (D. Utah 1999) (recognizing that "[s]imply identifying documents and claiming that they contain trade secret information is not enough").

Double Eagle argues that it has adequately identified its trade secrets as the "PSQ specifications, pricing, margins, costs, and customer drawings" contained in the downloaded files, and that this information can qualify as trade secret information. Dkt. 339 at 8-9 (identifying classes of purported trade secrets); Dkt. 278 at 18, n.6 (citing cases for the proposition that certain categories of information "may be" or "can also qualify as" trade secrets). But the fact that certain information falls into categories that "may" or "can" include trade secrets does not mean that Double Eagle's information is entitled to trade-secret protection under the particular facts of this case. *See Sw. Stainless*, 582 F.3d at 1189-90 (recognizing that pricing can constitute a trade secret, but that the quote at issue did not qualify as one).[5] It is incumbent upon the party asserting the trade secret to set forth facts that, if true, would

---

[3] *Quest Sol., Inc.*, 2021 WL 1688644, at *3 (describing requirements for establishing a trade secret in a compilation of information).

[4] *E.g., Sw. Stainless*, 582 F.3d at 1189 (addressing whether trade secret protection was available due to public disclosure).

[5] *See also, e.g., Utah Med. Prod.*, 79 F. Supp. 2d at 1313 (recognizing that it is "not enough" to simply identify documents and claim they contain trade secrets, as a plaintiff "must establish that the information in the identified documents is not published or readily ascertainable information to those in the field").

Case No. 19-cv-243

permit a trier of fact to hold that trade-secret protection is proper,[6] such as evidence of (1) the extent to which the information is known outside the business, (2) the extent to which the information is known by employees and others, (3) the measures taken to guard the secrecy of the information, (4) the value of the information to the business and its competitors, (5) the effort expended in developing the information, and the ease with which the information could be properly acquired or duplicated. *MTG Guarnieri Mfg., Inc. v. Clouatre*, 2010 OK CIV APP 71, ¶ 13, 239 P.3d 202, 209–10 (setting forth six factors adopted from the Restatement of Torts, § 757, Comment b (1939), for use in the analysis of OUTSA claims); *Tri-State Floors, Inc. v. Old Rule Servs., LLC*, No. 19-CV-707-JFH-JFJ, 2022 WL 4653717, at *10-11, *12, n.10 (N.D. Okla. Sept. 30, 2022) (equating evidence applicable in OUTSA and DTSA claims).

Double Eagle has failed to put forth evidence that would permit a jury to find the existence of a trade secret with respect to its pricing and cost information, at least some of which is (by necessity) available to third parties.[7] Double Eagle has not shown that it prevents its customers from sharing the prices Double Eagle charges or prevents its suppliers from sharing the prices Double Eagle pays.[8] At most, Double Eagle speculates as to whether pricing

---

[6] *Assessment Techs. Inst., LLC v. Parkes*, 588 F. Supp. 3d 1178, 1211 (D. Kan. 2022).

[7] *E.g.,* Dkt. 281-4 at 22 (Tr. at 187:4-18) (testifying that mill sent pricing sheets to Double Eagle in advance); Dkt. 281-10 at 1-4 (agreement with mill defining proprietary information as technical information in Double Eagle's possession); Dkt. 281-19 at 1-3 (Double Eagle sales order setting forth terms of sale without reference to nondisclosure or confidentiality requirement); Dkt. 282-7 at 11 (indicating purchase order with pricing information for Double Eagle customer Alkhorayef Petroleum was shared with Ace).

[8] Indeed, there is evidence that at least one Double Eagle customer had the right to share the quotes it received from Double Eagle. Dkt. 282-7 at 11 (transmitting Double Eagle purchase order for Alkhorayef products to Mr. Hooper); Dkt. 282-6 at 21 (providing that the "terms of the Agreement shall be deemed confidential and proprietary to Alkhorayef" and "may be used by Alkhorayef as it deems fit").

Case No. 19-cv-243

and cost information is shared as a general matter. *See* Dkt. 281-11 at 5 (stating it would be "rare" for customers to share pricing information). But speculation is not evidence. *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988) (recognizing that a party cannot resort to speculation to avoid summary judgment). And this Court has no obligation to credit Double Eagle's speculation regarding whether it is rare for customers and suppliers to share quotes, particularly in the face of evidence that this information has been disclosed to—and in some cases by—third parties who have no obligation to keep the information secret. Dkt. Nos. 281-4 at 22; 281-10 at 1-4; 281-19 at 1-3; 282-6 at 21. *See Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (recognizing that conclusory affidavits that do not contain factual bases cannot defeat summary judgment).[9] Double Eagle has failed to point to an actual price or an actual cost that was only disclosed to those with an obligation to protect the confidentiality of that price or cost. Absent such evidence, Double Eagle cannot establish that its pricing and cost information was a trade secret. *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1245 (10th Cir. 2006) (finding the court did not abuse its discretion in finding no trade secret protection where the information was known outside the defendant's business, known by employees and others in the business, and easily acquired by others).

Double Eagle's claim regarding its customers' drawings fails for similar reasons. Tellingly, the drawings at issue are, by Double Eagle's definition, "customer" drawings. Dkt. 278 at 9, 13, 18; Dkt. 281-1 at 8-9 (stating that ACE requires drawings "from the customers"). There is no evidence that the allegedly misappropriated drawings belong to Double Eagle—a fact which, on

---

[9] *See also Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) ("If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished."); *Southwest Stainless, LP*, 582 F.3d at 1190 (concluding the district court erred in holding information constituted a trade secret where the information had been disclosed to a third-party who had no obligation to keep the information confidential).

its own, dooms Double Eagle's DTSA claims. See 18 U.S.C. § 1836(b)(1) (providing that DTSA claims may only be brought by the "owner of a trade secret"); *Select Energy Servs., Inc. v. Mammoth Energy Servs., Inc.*, No. CIV-19-28-R, 2019 WL 1434586, at *4 (W.D. Okla. Mar. 29, 2019) (dismissing DTSA action when plaintiffs failed to allege ownership of the trade secrets). Furthermore, Double Eagle has not presented any evidence that any of the Restatement factors identified in *MTG Guarnieri Mfg.* and *Tri-State Floors* would weigh in its favor with respect to the customer drawings allegedly taken by Defendants. *MTG Guarnieri Mfg.*, 2010 OK CIV APP 71, ¶ 13, 239 P.3d at 209–10; *Tri-State Floors*, 2022 WL 4653717, at *12. Double Eagle has pointed to no evidence that its customers have agreed not to share their drawings, that its customers restrict use of and access to the drawings, that it would be difficult to obtain the drawings by asking the customers for a copy, or that Double Eagle, rather than the customers, expended the cost and effort required to develop the drawings. At most, Double Eagle points to evidence that Defendants should not have gotten the information from Double Eagle; that is not evidence that the information was not freely available elsewhere. *Black, Sivalls & Bryson, Inc. v. Keystone Steel Fabrication, Inc.*, 584 F.2d 946, 951–52 (10th Cir. 1978) (recognizing that information that "had been published or otherwise disseminated" could not qualify as trade secrets). Double Eagle has failed to set forth evidence from which a jury could find that its customer drawings constitute trade secrets.

While there is no direct evidence that Double Eagle's margins and specifications were disclosed to or originated with third parties outside of Double Eagle, that is not enough to create a jury question as to the existence of a trade secret. Double Eagle cannot simply rely upon "catchall" phrases or identify categories of trade secrets they intend to pursue at trial. *See Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998); *see also Inteli-Clear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020) (recognizing that plaintiffs cannot "cite and incorporate by reference hundreds of documents that purportedly reference or reflect the trade secret

Case No. 19-cv-243

information"). Double Eagle must point to a particular trade secret, and present evidence that ***that*** trade secret is entitled to protection. But Double Eagle has not introduced any evidence that its margins and specifications were subject to the general protections it identified, were known only to a limited number of people, were not readily ascertainable, or were valuable because they were not widely known.[10] It was required to do so to create a jury question as to the existence of a trade secret. *Utah Med. Prod.*, 79 F. Supp. 2d at 1313; *Bradbury Co. v. Teissier-duCros*, 413 F. Supp. 2d 1209, 1224 (D. Kan. 2006) (granting summary judgment where the plaintiff presented "no evidence that any of the other things that make up the investigation, such as the market's use of steel and customer surveys, were not generally known or readily ascertainable").

Finally, to the extent Double Eagle is arguing that a trade secret exists in a compilation of the information downloaded by Mr. Hooper, that claim must fail. A trade secret can exist in a combination of components, some of which are public, so long as the unique combination of components is secret and provides a competitive advantage. *See Harvey Barnett*, 338 F.3d at 1129. But a party seeking to assert a trade secret in a compilation must describe the combination of elements and explain how the compilation is outside the general scope ascertainable by proper means. *Quest Sol., Inc.*, 2021 WL 1688644, at *2. Double Eagle has not identified a combination of elements that form a protectable trade secret, let alone satisfied its burden of presenting evidence from which a jury could find that the combination of elements is a unique, independently valuable compilation not ascertainable by proper means.

---

[10] This failure is particularly salient with respect to the specification identified by Double Eagle. Although Double Eagle asserts the information is confidential and subject to restrictions, it does not present any evidence of the cost of creation, nor does it provide any evidence as to the number of people with access to the specifications and the measures employed to prevent disclosure of the specifications by those individuals. *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129-31 (10th Cir. 2003).

Case No. 19-cv-243

Double Eagle moved for summary judgment on its trade secret claim, arguing that the facts it presented were sufficient to permit a jury to find in its favor. Dkt. 278 at 17-22. After reviewing all the materials submitted by Double Eagle in support of its motion and in response to the Court's Order, this Court is convinced otherwise.[11] Double Eagle claims that all of the down-loaded files include trade-secret information; but the evidence shows that at least some of that information either belongs to or has been disclosed to third parties.[12] Double Eagle claims that it protects all of the information at issue from disclosure; but the evidence does not support the assertion that all the information is subject to Double Eagle's protections.[13] It is possible that the

---

[11] This Court is not required to search the record for facts beyond those cited by the parties in support of their motions for summary judgment. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) (recognizing that a district court "has discretion to go beyond the referenced portions" of the record "but is not required to do so").

[12] *Compare* Dkt. 278 at 18 (arguing that the information "undisputably" falls within protected categories), *with* Dkt. 281-11 at 73 (indicating that Borets will provide a copy of "Boret's confidential machine drawings"). *See also* Dkt. 281-4 at 35 (identifying a customer that would disclose competitor pricing); Dkt. 281-1 at 8-9 (Tr. at 69:16-70:7) (indicating that some drawings are provided by customers); Dkt. 282-6 at 21 (providing that the "terms of the Agreement shall be deemed confidential and proprietary to Alkhorayef" and "may be used by Alkhorayef as it deems fit").

[13] *Compare* Dkt. 281-11 at 5-6 (indicating that the affiant was unaware of any instance of Alkharoyef sharing pricing with a supplier), *with* Dkt. Nos. 282-6 at 21, Dkt. 282-7 at 11 (transmitting Double Eagle pricing and providing that the "terms of the Agreement shall be deemed confidential and proprietary to Alkhorayef" and "may be used by Alkhorayef as it deems fit"). *See* Dkt. 281-20 (confidentiality agreement concerning information that Double Eagle "possesses"); Dkt. 281-7 at 8 (indicating that employees need to maintain information "they receive which is of a ***nonpublic or confidential character*** in the strictest of confidence" (emphasis added)); Dkt. 281-8 (indicating that the first version of Double Eagle's device security policy was not adopted until April 1, 2018); Dkt. 281-11 at 3 (asserting that access to Double Eagle's information is "restricted based on role," but failing to specify the restrictions applicable to the downloaded files).

Case No. 19-cv-243

downloaded files may contain information that could qualify as a trade secret, but Double Eagle has done nothing to distinguish the wheat from the chaff. Accordingly, the Court holds that Double Eagle has failed to set forth evidence from which a jury could find that it holds a trade secret in the information allegedly downloaded by Mr. Hooper, whether individually or in combination, and summary judgment is GRANTED to Defendants on Double Eagle's DTSA and OUTSA claims.

## II.

The Court next considers Double Eagle's common-law claim for misappropriation of business information, which is set forth in Count III of the complaint. According to Double Eagle, even if the information taken by Mr. Hooper does not constitute trade secrets, Mr. Hooper nevertheless committed a common-law tort by taking Double Eagle's files. But a plaintiff seeking to recover for misappropriation of confidential business information must present evidence that the misappropriated data was confidential. *See Central Plastics Co. v. Goodson*, 1975 OK 71, ¶ 17, 537 P.2d 330, 333 (recognizing that "confidential information, in order to be protected against disclosure by employees, must be the particular secrets of the employer as distinguished from the general secrets of the trade in which he is engaged"). If the information is not secret, then the taking of that information will not give rise to liability. *Am. Biomedical Grp., Inc. v. Techtrol, Inc.*, 2016 OK 55, ¶ 15, 374 P.3d 820, 825–26. For the reasons discussed in Section I, *supra*, Double Eagle has failed to present evidence concerning the secrecy of the information that Mr. Hooper allegedly misappropriated, and summary judgment is GRANTED to Defendants on this claim.

## III.

Double Eagle argues that Defendants violated the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, when Mr. Hooper downloaded files on March 22, 2019. Dkt. 2 at 6-7. To establish a right to civil relief under § 1030(a)(2), a plaintiff must demonstrate that the defendant "(1) intentionally

Case No. 19-cv-243

'accessed' a computer, (2) lacked authorization or exceeded his authorized access to the computer, (3) obtained information from the computer, and (4) caused a loss of at least $5,000 to [plaintiff]." *Clarity Servs., Inc. v. Barney*, 698 F. Supp. 2d 1309, 1313 (M.D. Fla. 2010) (discussing 18 U.S.C. § 1030(a)(2)(C)). There is no dispute that Mr. Hooper was employed by Double Eagle and had the ability to access the documents at issue when he downloaded the materials on March 22, 2019. Nevertheless, Double Eagle claims that it is entitled to relief under § 1030(a)(2) because Mr. Hooper exceeded his authorized access when he took information in violation of Double Eagle's policies for purposes unrelated to Double Eagle's business. Dkt. 299 at 17-18.

This Court recently considered—and rejected—a virtually identical CFAA claim. In *Tri-State Floors,* plaintiff alleged that the defendant "exceeded his authorized access by using [the defendant's] computers . . . to steal Tri-State customers and divert them to Old Rule." 2022 WL 4653719, at *8 (N.D. Okla. Sept. 30, 2022). Relying on *Van Buren v. United States*, 593 U.S. 374 (2021), this Court recognized that the term "'exceeds authorized access' equates with 'the act of entering a part of the system to which a computer user lacks access privileges,'" and held that the CFAA does not provide a cause of action in cases where a person with permission to access computer information does so with improper motives. *Tri-State Floors*, 2022 WL 4653719, at *8 (quoting *Van Buren*, 593 U.S. at 388-89). The Court sees no reason to depart from its prior holding, which comports with both the statutory language and the Supreme Court's instruction in *Van Buren*. Accordingly, summary judgment is GRANTED in favor of Defendants with respect to Double Eagle's CFAA claim.

IV.

Finally, the Court considers Double Eagle's civil conspiracy claim. "[A] civil conspiracy claim enlarges the pool of potential defendants from whom a plaintiff may recover for an underlying tort." *Gaylord Ent. Co. v. Thompson*, 1998 OK 30, 958 P.2d 128, 148, n.85. Because civil conspiracy is

Case No. 19-cv-243

not an independent tort, liability can only be established by a showing that the conspirators "pursue[d] an independently unlawful purpose or use[d] an independently unlawful means." *Id.* In other words, "in order for a civil conspiracy claim to lie, it must be based on an underlying tort." *AKC ex rel. Carroll v. Lawton Indep. Sch. Dist. No. 8*, 9 F. Supp. 3d 1240, 1245 (W.D. Okla. 2014). Because the Court has ruled in Defendants' favor on each of the independent tort claims asserted in this action, Double Eagle's civil conspiracy claim must fall along with those claims. Summary judgment is therefore GRANTED to Defendants on this issue.

## V.

For the reasons set forth above, Double Eagle has failed to sufficiently identify the trade secrets at issue here, and has failed to present sufficient evidence to permit a jury to conclude that the information allegedly misappropriated by Defendants was either confidential or protected under the DTSA or the OUTSA. Furthermore, because Mr. Hooper was employed by Double Eagle and had access to Double Eagle's files at the time he downloaded the information at issue in this case, Double Eagle cannot assert a CFAA claim against Defendants. The failure of these tort claims precludes any recovery under a civil conspiracy theory. Defendants' Motion for Summary Judgment is therefore GRANTED with respect to each of Double Eagle's claims.

Case No. 19-cv-243

DATED this 25th day of June 2024.

_____
JOHN D. RUSSELL
*United States District Judge*